**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW SLABON,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO DEPARTMENT OF WATER MANAGEMENT & CITY OF CHICAGO DEPARTMENT OF FINANCE,<br><br>Defendants. | No. 25 CV 14680<br><br>Judge Georgia N. Alexakis |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Andrew Slabon seeks to enjoin the City of Chicago from billing him for water services, which he alleges that he has not received at his home since 2014. He sues the City of Chicago's Departments of Water Management and Finance (collectively, "defendants" or the "City") under the Takings and Due Process clauses of the Fifth and Fourteenth Amendments and under the First Amendment, as well as pleading various state law theories. For the reasons that follow, the Court grants the City's motion to dismiss. [24].

## I. Legal Standards

A defendant may raise a lack of standing in a motion to dismiss under Rule 12(b)(1). *Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). "'[A]t the pleading stage, the plaintiff must clearly … allege facts demonstrating each element' of the standing inquiry.'" *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). To establish standing, a plaintiff must allege "(i) that he suffered an

injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "sufficient facts to state a claim for relief that is plausible on its face." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (citation omitted). On a motion to dismiss for failure to state a claim, the court accepts as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016). That said, the court need not credit legal conclusions or "threadbare recitals" supported by "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018).

## II. Background

### A. Legal Framework

Chicago's Department of Water Management ("DWM") operates and maintains the City's water infrastructure. Municipal Code of Chicago ("MCC") §§ 2-106-010, 2-106-040. City code requires occupied residential properties to receive potable water and requires the DWM to assess a fee sufficient to recover associated costs. *Id.* §§ 18-

29-602.1, 18-29-602.2, 11-12-260. The fee is based on water usage for homes with a meter, and is calculated using a fixed rate for homes without meters. *Id.* §§ 11-12-270, 11-12-310.

In 2022, Chicago's City Council passed an ordinance prohibiting DWM from shutting off water service for nonpayment.[1] If a residential property's water bill remains unpaid, the City may file a claim for lien after providing notice and may enforce its lien through foreclosure proceedings. *Id.* §§ 11-12-490, 11-12-500.

**B. Facts**

The Court takes the following relevant facts from Slabon's complaint [1-1], accepting all well-pleaded facts as true and making all possible inferences in Slabon's favor.[2] *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

Slabon owns the home where he lives at 2644 N. Mason Avenue in Chicago, Illinois. [1-1] ¶¶ 1–2. On December 6, 2014, the City disconnected water service to the home in response to a reported water leak. *Id.* ¶¶ 3–4. The home has remained disconnected from the City's water service since that date. *Id.* at 19.

In 2016, Slabon discovered that the water service lines serving his home were made of lead. *Id.* ¶ 5. He also discovered that the City's water includes added fluoride.

[1] J. Proceedings 49653, 50572–77 (Jul. 22, 2022), https://chicityclerk.s3.us-west-2.amazonaws.com/s3fspublic-1/reports/2022_07_20_VI_VII.pdf. Before this ordinance was passed, water service at residential properties could be shut off for nonpayment in certain circumstances. *Id.*

[2] This opinion refers to paragraphs in the complaint's Statement of Facts using paragraph numbers. The paragraph numbering in subsequent sections restarts, so the opinion cites page numbers for those sections. Because the internal page numbering of the complaint includes page 15 twice, the opinion uses the page numbers included in the CM/ECF stamps at the top of each page.

*Id.* ¶ 7. After these realizations, Slabon attempted to terminate any contractual relationship between DWM and his home, including ending the billing for water service that had continued despite his home's already having been disconnected from water. *Id.* ¶ 8. Slabon spoke with a DWM representative about his concerns, and DWM subsequently inspected his home's "Buffalo box," the access point for water connection. *Id.* ¶¶ 10–14. At that point, DWM reduced Slabon's outstanding water bill balance for 2014–16 from $2,100 to approximately $800. *Id.* ¶ 14.

Although Slabon's home remained disconnected from the City's water service, DWM resumed issuing water bills to his property in 2019. *Id.* ¶ 19. Slabon currently owes $3,397.57 for water service despite not having received any municipal water since 2014. *Id.* ¶ 20. In November 2021, Slabon received a collection notice from DWM's billing department threatening a property lien as a measure to collect that balance. *Id.* ¶ 25. Slabon has contacted the City multiple times to request that the lead service lines serving his home be replaced, and even offered to replace them himself, to no avail. *Id.* ¶¶ 18, 60. He brought the instant suit in state court, and the City removed to this Court based on the federal questions at issue. [1] ¶ 4.

## III. Analysis

### A. Standing

At the outset, the Court addresses the City's argument that Slabon lacks standing to bring his Counts VI and IX, which challenge the City's practice of fluoridating water under the municipal code and Illinois state law,[3] and the portion

[3] Claims VI and IX are identical, so can be discussed together without differentiation.

of Count X that is based on water fluoridation and the City's use of lead pipes.[4] [1-1] at 23–24. With respect to those grievances, Slabon has not alleged "an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC*, 594 U.S. at 423. To be considered particularized, the alleged injury must "affect 'the plaintiff in a personal and individual way'" beyond a mere "generalized grievance." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (quoting *Lujan*, 504 U.S. at 560, n.1). "[A] citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally … Nor may citizens sue merely because their legal objection is accompanied by a strong moral, ideological, or policy objection to a government action." *Id.*

Despite his protestations, Slabon's allegations about the dangers of fluoride and lead are general grievances, not particularized injuries. Slabon alleges that fluoride is harmful to the populace, particularly children. [1-1] ¶¶ 33–37. He also alleges that lead is "highly toxic" and poses a "recognized risk to human neurological development." *Id.* ¶ 6. But he does not allege that fluoride or lead exposure has harmed him personally or subjected him to an imminent threat of harm, as standing requires. *See generally id.* He does not allege, for example, that he personally experienced neurological damage as a result of exposure to fluoride or lead in Chicago water. Slabon's allegations that fluoride and lead are harmful do not, alone, constitute an injury that is particularized to him.

[4] The complaint contains two claims labeled Count X. This portion of the opinion refers to Count X beginning on [1-1] at page 24, which Slabon has titled "Constructive Fraud and Ultra Vires." The complaint includes no Count VIII.

Counts VI and IX are thus dismissed without prejudice for want of standing, along with the portion of Count X that discusses fluoride and lead exposure.

## B. Federal Claims

### 1. Statute of Limitations

In Illinois, claims for constitutional violations brought pursuant to 42 U.S.C. § 1983 are subject to a two-year statute of limitations. *Woods v. Illinois Dept. of Children and Fam. Servs.*, 710 F.3d 762, 766 (7th Cir. 2013). A cause of action for a § 1983 claim accrues "when a plaintiff knows the fact and the cause of an injury" and thus "knows or should know that his constitutional rights were violated." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 477 (7th Cir. 2024). Slabon's complaint alleges that DWM resumed sending him erroneous bills in 2019, [1-1] ¶ 19, and yet Slabon did not file suit until October 2025, [1-1] at 2.

Slabon argues that his claims are timely under the continuing violation doctrine. [39] at 23. His argument reflects a misunderstanding of the doctrine.[5] A continuing violation is one where an injury accrues as a "consequence of a numerous

[5] As the City pointed out, [41] at 1 n.2, Slabon's response brief contains quotations that do not appear in the cases to which they are attributed. He incorrectly quotes *Filipovic v. K & R Exp. Systems, Inc.*, 176 F.3d 390, 397 (7th Cir. 1999), [39] at 24; *City of Chicago v. Turner*, 80 Ill. 419, 419–20 (1875), [39] at 9; and *Koontz v. St. Johns River Water Management Dist.*, 570 U.S. 595, 604, 606 (2013), [39] at 12. Pro se litigants are held to the standards of Federal Rule of Civil Procedure 11, which requires accuracy in all court filings. *Jones v. Kankakee Cnty. Sheriff's Dep't*, 164 F.4th 967 (7th Cir. 2026). "[A]ll litigants—represented and unrepresented—must read their filings and take reasonable care to avoid misrepresentations, factual and legal." *Id.* The Court reminds Slabon that "even pro se litigants are expected to act with the utmost candor towards the Court," including faithfully representing all cited cases. *Stoller v. Berkshire Hathaway, Inc.*, 18-CV-47, 2018 WL 10419769, at *1 n.1 (N.D. Ill. Feb. 20, 2018). Slabon must ensure that all future filings he submits are accurate.

and continuous series of events." *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). In *Heard*, for example, the plaintiff's medical needs worsened with every passing day that the defendants denied him treatment, eventually accumulating into a constitutional injury. *Id.* at 319–20. Slabon's injuries, in contrast, are continuing in the sense that he continues to receive bills, but an injury was fully present from the first allegedly erroneous bill. When a plaintiff seeks redress for a series of repeated injuries of the same type, such as repeated acts of wage discrimination, he is not permitted to reach back to the first instance by suing within the limitations period for the last. *See id.* at 320.

Defendants argue that Slabon's Takings and Due Process claims should be fully time-barred because the complaint does not discuss any specific events since 2022. [25] at 10; [41] at 6. However, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Liberally construed, Slabon's complaint supports an inference that the City has continued sending him the bills to which he objects. [1-1] at 19 (alleging that the City "has engaged in a continuing course of conduct by issuing and maintaining unlawful bills"); *id.* at 27 (seeking to enjoin the City from "continuing to bill, collect, or attempt to collect any charges … associated with … water service to the Subject Property").

Because only claims based on events since October 2023 are timely, though, the Court considers the merits of Slabon's Takings and Due Process claims based on any events from that date going forward.

### 2. Takings Clause

Slabon asserts a claim that "[t]he City's ongoing efforts to use the threat of liens, foreclosure, and collection to compel payment for services not rendered constitute an unconstitutional attempt to take the Plaintiff's private property for public use without providing just compensation, in violation of the Fifth and Fourteenth Amendments." [1-1] at 19. The Takings Clause provides that "'private property' shall not 'be taken for public use, without just compensation.'" *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (quoting U.S. Const. amend. V); *see also Sheetz v. County of El Dorado*, 601 U.S. 267, 276 (2024) ("[T]he Fourteenth Amendment ... incorporates the Takings Clause against the States."). To state a claim under the Takings Clause, a plaintiff must allege that the government took private property he owned without just compensation. U.S. Const. amend. V. Because Slabon does not allege a taking within the meaning of the Takings Clause, Count I fails.

"[A] taking can occur through 'two distinct classes' of government action: (1) permanent deprivations or destructions of physical property or (2) actions that regulate how a person can use their property, but do not appropriate, physically control, or destroy it." *Hadley v. City of South Bend*, 154 F.4th 549, 554 (7th Cir. 2025) (quoting *Yee v. City of Escondido*, 503 U.S. 519, 522–23 (1992)). Neither avenue applies in Slabon's situation.

Per se takings include takings of real property or of personal property, including cash. *BBLI Edison, LLC v. City of Chi., Dep't of Hous.*, 183 F.4th 516, 520 (7th Cir. 2026). "But physical takings are not limitless. 'Taxes, user fees, and similar laws and regulations that may impose financial burdens on property owners' do not

qualify as physical takings." *Id.* (quoting *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 615 (2013)) (cleaned up); *see also Bezingue v. Steuben Lakes Reg'l. Waste Dist.*, 507 F. Supp. 3d 1021, 1043 (N.D. Ind. 2020) ("[A] fee charged by the government is not a taking.") (citing *U.S. v. Sperry Corp.*, 493 U.S. 52, 62 (1989)). The City's imposition of a mandatory water bill on Slabon is not a taking of real property. The government has not deprived Slabon of his home or destroyed it through assessing the water bill.

The water bills also do not constitute a "taking" of Slabon's money. Although Slabon's home has not been connected to the City's water system since 2014, the City may assess a fee for water based on the availability of the service. A surprisingly analogous situation arose after the Iranian Revolution of 1979. *Sperry Corp.*, 493 U.S. at 54–57. American companies that had entered into contracts with the Iranian government prior to the revolution had the opportunity to file claims against the Iranian government in an international arbitral tribunal, the Iran-United States Claims Tribunal. *Id.* at 55. The Tribunal's costs were partially covered by a 2% fee deducted from each award it certified. *Id.* at 57. Although Sperry would have preferred to sue in an Article III court, it brought a claim against Iran through the Tribunal and entered into a settlement with Iran resolving an underlying contract dispute. *Id.* at 56. The 2% fee was deducted from Sperry's award over its protestations. *Id.* at 57. The Supreme Court found that the government did not violate Takings Clause by assessing a user fee for services Sperry would have preferred not to use even if Sperry never actually used the services because it benefitted "in the

sense that the services [were] available for [its] use." *Id.* at 63 (second alteration in original).

The City's water is Slabon's Tribunal. While Slabon would prefer not to make use of the service, and allegedly has not since 2014, he is still required to pay the City's water fee for the service's availability. Chicago's code requires that "[e]very structure equipped with plumbing fixtures and utilized for human occupancy or habitation shall be provided with a potable supply of water from the Chicago Waterworks System at the rates and charges specified in Chapter 11-12." MCC § 18-29-602.1. Slabon, then, is required to receive the City's water at his home and to pay for it. *Id.* The alleged fact that indicates any possible legal violation is not the City's continued bills, but the continued disconnection of Slabon's home from the City's water.

The City's threat that it may place a lien on or foreclose on Slabon's home to collect his outstanding water debt does not transform its levy of a mandatory water fee into a taking. State and local governments may foreclose on properties to collect money the owners owe to the government, without violating the Takings Clause, so long as any profit from a foreclosure sale in excess of the debt is returned to the debtor. *See Tyler v. Hennepin Cnty.*, 598 U.S. 631, 639 (2023) (a county may sell a resident's home to recover unpaid property taxes, but may not take more than it is due).

Slabon also argues that the City's ongoing issuance of water bills amounts to a regulatory taking. [39] at 11–12. A government's regulation can be so onerous that

it constitutes a taking if it "denies all economically beneficial or productive use" or, alternatively, "based on a complex of factors, including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Murr v. Wisconsin*, 582 U.S. 383, 393 (2017) (citation omitted). Slabon's complaint does not allege that the ongoing water bills have had an economic impact beyond the cost of the bills themselves, nor that the regulation has interfered with investment-backed expectations. *See generally* [1-1]. And the character of the governmental action—requiring residents to pay a water fee—is not akin to a taking. Slabon invokes *Koontz v. St. Johns River Water Management District* for its holding that a government's denial of a permit when an applicant refuses to accede to an extortionate demand for property qualifies as a regulatory taking. [39] at 12. *Koontz* found a regulatory taking where a local water management district denied a land use permit when the landowner declined to fund offsite mitigation work. 570 U.S. at 602. While *Koontz* clarified that the government cannot evade the Takings Clause by premising permits on unrelated contributions, it also specified that "taxes and user fees are not takings" and that its holding "does not affect the ability of governments to impose property taxes, user fees, and similar laws and regulations that may impose financial burdens on property owners." *Id.* at 615 (cleaned up). *Koontz* is therefore inapposite here.

With no taking, there can be no violation of the Takings Clause. Count I is thus dismissed.

### 3. Due Process Clause

Slabon asserts that the City has deprived him of an interest in property "[b]y continuing to impose and collect charges for unwanted and unused water services." [1-1] at 21. He alleges both procedural and substantive due process violations. *Id.* "A procedural due process claim involves a two-step inquiry: (1) whether the defendants deprived the plaintiffs of a constitutionally protected liberty or property interest; and (2) if so, whether that deprivation occurred without due process of law." *Doe v. Heck*, 327 F.3d 492, 526 (7th Cir. 2003) (citing *Zinermon v. Burch,* 494 U.S. 113, 125 (1990)); *Martin v. Haling*, 94 F.4th 667, 671 (7th Cir. 2024).

Slabon's procedural due process claim fails to allege the deprivation of a protected interest. Slabon's complaint alleges that the City deprived him of property rights through "involuntary service continuation or billing," which Slabon had no ability to challenge. [1-1] at 21. In his response to the City's motion to dismiss, Slabon attempts to recast his property interest as the right not to be charged after water service was terminated. [39] at 1–2.

Neither framing supports an allegation of a protected property interest. For similar reasons as to why the City charging Slabon an unwanted water fee is not a taking under the Fifth Amendment, it is also not a deprivation of a protected property interest under the Fourteenth Amendment. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 773 (7th Cir. 2021) (quoting *Bd. of Regents of*

*State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Slabon has not alleged that he paid the bills or was otherwise deprived of property. *See generally* [1-1]. He has no cognizable interest in not receiving water bills, which are assessed in exchange for the availability of water as required by the City's code. MCC § 18-29-602.1.

While Slabon refuses municipal water service due to concerns about lead and fluoride, Illinois law allows the City to manage its own water system by creating regulations and rates the City finds appropriate. 65 ILCS 5/11-125-3. The City's code lays out a clear scheme: every occupied home must receive—and pay for—water. MCC § 18-29-602.1. Slabon is correct in that the City's code "effectively forces property owners to retain municipal water service regardless of use or consent," [1-1] ¶ 31, but he is incorrect that such a scheme violates his right to due process. Slabon does not have a right not to be billed for a water service that his property is legally required to be connected to as long as it is inhabited. In *Danahy v. City of Chicago*, a group of plaintiffs alleged that the City violated their due process rights by issuing higher water bills for the unmetered properties they owned compared to metered properties. No. 24 CV 449, 2025 WL 2977743, at *1–2 (N.D. Ill. Oct. 22, 2025). In other words, like Slabon, the *Danahy* plaintiffs alleged that the City was overcharging them for water. *Id.* at *1. The district court in *Danahy* found that this grievance did not amount to a due process claim because the plaintiffs' concerns about whether they received City water and how much they were charged for it were not protected interests for due process purposes. *Id.* at *7. The *Danahy* plaintiffs did not allege a protected interest under any state law, and "Illinois delegates to municipalities the

right to own and operate water utilities … Pursuant to its delegated authority, the City enacted … municipal code water regulations." *Id.* Relevant here, those water regulations require that occupied residential properties receive water and pay for it. MCC § 18-29-602.1. Because Slabon has not alleged that he was deprived of a protected interest in being billed for unwanted water, his procedural due process claim fails.

Slabon also pleads a theory of substantive due process. [1-1] at 21. To state a substantive due process claim, a plaintiff must allege a deprivation of a "protected life, liberty or property interest." *Indiana Land Tr. #3082 v. Hammond Redevelopment Comm'n*, 107 F.4th 693, 699 (7th Cir. 2024) (quoting *Zorzi v. Cnty. of Putnam*, 30 F.3d 885, 894 (7th Cir. 1994)). "The scope of substantive due process is very limited and courts are reluctant to expand the concept." *Robbin v. City of Berwyn*, 108 F.4th 586, 589 (7th Cir. 2024) (cleaned up). "Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 602 (7th Cir. 2022) (quoting *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003)).

Slabon asserts that he has a "fundamental right to refuse unwanted services," [1-1] at 21, but fundamental rights are limited to those "which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."

*Robbin v. City of Berwyn*, 108 F.4th 586, 590 (7th Cir. 2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). The right to choose whether or not one is subjected to municipal water services, even when the water contains fluoride, is not among those rights. *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 567 (7th Cir. 1991) (holding that the right to continued municipal water service is not a fundamental right); *see also Lukaszczyk*, 47 F.4th at 602 (holding that refusal of an unwanted vaccine is not a fundamental right).

Slabon alternatively argues that the City's actions "are without rational basis." [1-1] at 21. That is incorrect. The City has a rational basis for requiring all occupied residential properties to pay for water service: water is a basic utility, and its universal availability promotes public health and welfare. Under rational basis review, a law is constitutional even if it is not the optimal policy so long as it bears a rational relationship to some legitimate end. *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013). Slabon's substantive due process claim thus fails.

Count III is dismissed.

**4. First Amendment**

Slabon also asserts freedom of speech claims under the First Amendment. [1-1] at 24–25. His complaint asserts that "[p]ayment for the fluoridated water constitutes a form of compelled speech or forced endorsement of a government program to which the Plaintiff objects on moral, spiritual, or conscientious grounds." *Id.* at 24. But the First Amendment does not relieve citizens of the obligation to finance government programs with which they disagree. "[E]ven persons who are taxed to pay for governmental speech are not entitled to relief from the message (or

the obligation to pay for it)." *Freedom From Religion Found., Inc. v. Obama*, 641 F.3d 803, 806 (7th Cir. 2011).

Slabon's reliance on *Janus v. AFSCME, Council 31*, 585 U.S. 878 (2018), is misplaced. In *Janus*, the Supreme Court considered the forced contribution of funds to a private union rather than a governmental body. *Id.* at 894 ("Because the compelled subsidization of *private* speech seriously impinges on First Amendment rights, it cannot be casually allowed.") (emphasis added). A compulsion for citizens to financially support the government, not a private organization, is fundamentally distinct and is not barred by the First Amendment. *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 623 (7th Cir. 2020) ("The government, as a general rule, may support valid programs and policies by taxes or other exactions binding on protesting parties.") (quoting *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 559 (2005)).

In his response to the City's motion to dismiss, Slabon attempts to reframe his First Amendment claim as a religious objection to providing financial support to a policy to which he objects: fluoridating water. [39] at 17 ("Plaintiff alleges that forced payment for fluoridated water constitutes compelled participation and financial endorsement of a government policy Plaintiff opposes on moral and conscientious grounds."). This argument also holds no water. The First Amendment does not protect citizens from funding policies that conflict with their beliefs. *Ruhaak v. C.I.R.*, 422 Fed. Appx. 530, 532 (7th Cir. 2011) ("Taxpayers have no constitutional or statutory right to withhold taxes based on moral or religious objections to government expenditures."). Count XI is dismissed.

### C. State Law Claims

While "the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits," courts recognize an exception to that rule "when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (citation omitted). Slabon asserts three claims under the Illinois Constitution, each following an analogous claim under the U.S. Constitution. The parties do not address these claims separately from their federal counterparts, and the Court adopts their approach and analyzes Slabon's Illinois constitutional claims the same as those under the federal constitution. *See Hampton v. Metro. Water Reclamation Dist. of Greater Chi.*, 57 N.E.3d 1229, 1236 (Ill. 2016) (where a plaintiff alleges a taking of, not damage to, his property, his claim under Article I, Section 15 of the Illinois Constitution follows the analysis of his federal Takings Clause claim); *Dotty's Cafe v. Ill. Gaming Bd.*, 143 N.E.3d 173, 184 (Ill. App. 1st Dist. 2019) ("Consistent with their nearly identical language, our courts generally analyze federal and state due process claims using the same standards unless good cause exists to interpret them differently."); *Jucha v. City of North Chicago*, 63 F. Supp. 3d 820, 831 (N.D. Ill. 2014) (analyzing state due process and free speech claims in parallel with the federal constitutional analysis where the parties did not address them separately).

Because the state constitutional analysis follows the federal analysis, the Court dismisses Counts II, IV, and XII for the same reasons stated above.

Slabon also brings claims under Illinois law for Constructive Fraud and Ultra Vires Acts (Counts V and X) and Breach of Statutory Duty and Abuse of Authority (Count VII). Because Slabon is a citizen of Illinois, the Court's jurisdiction over these state-law claims relies on the supplemental jurisdiction granted by 28 U.S.C. § 1367. But, as discussed above, the Court dismisses all federal claims. And because the Court dismisses all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over these remaining state-law claims. 28 U.S.C. § 1367(c)(3).

### D. Remaining Claims

Slabon brings two final counts: for "Declaratory Judgment" (Count XIII) and "Injunctive Relief (Preliminary and Permanent)" (Count X[6]). [1-1] at 26–27. Declaratory judgment and injunctive relief are remedies, not independent causes of action, and should not be pleaded as separate counts. *Knutson v. Village of Lakemoor*, 932 F.3d 572, 576 n.4 (7th Cir. 2019). Counts XIII and Count X are thus dismissed.

## IV. Conclusion

For the foregoing reasons, the Court grants the City's motion to dismiss. [24]. Slabon may file an amended complaint if he can cure the deficiencies identified in this opinion while still complying with his obligations under Federal Rule of Civil Procedure 11. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district

[6] This section refers to Count X beginning on page 27 of the complaint [1-1].

court should grant leave to amend after granting a motion to dismiss."). Any amended complaint is due on or before September 8, 2026.

If plaintiff does not submit an amended complaint by September 8, 2026, the dismissal of Counts I, II, III, IV, XI, XII, XIII, and X ("Injunctive Relief") will automatically convert to a dismissal with prejudice; the Court will relinquish supplemental jurisdiction over Counts V, VII, and X ("Constructive Fraud and Ultra Vires Acts") and remand the matter to the Circuit Court of Cook County for resolution of those counts; and this case will be terminated.

ENTER: 8/24/2026

Georgia N. Alexakis
United States District Judge